UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD WEBSTER,

Plaintiff,

v.

Case No. 01-74983
Hon. Victoria A. Roberts

UNITED AUTO WORKERS, LOCAL 51, INTERNATIONAL UNITED AUTO WORKERS, ARTHUR BIANCHI, NATHANIEL MARTIN, ROSALYN GRANT, HOLLY WAINGROW, OLLIE WILLIAMS, ROBERT LEE MITCHELL, JAMES MOORE, STEPHEN YOKICH, MAURICE MITCHELL, STAN GEIS, PETE CUTWAY, GIL WOJCIK NATE GOODEN and EUNICE STOKES, jointly and severally,

Defendants.

FILED
2003 SEP -8 P 4: 13
U.S. DIST. COURT CLERK
EAST. DIST. MICHIGAN
DETROIT

BENJAMIN WHITFIELD, JR. & ASSOCIATES, P.C.
By: BENJAMIN WHITFIELD, JR. (P23562)
CYNTHIA J. GAITHER (P40755)
Attorney for Plaintiff
440 East Congress, Suite 300
Detroit, MI 48226
(313) 961-1000

KLIMIST, McKNIGHT, SALE, McCLOW & CANZANO, P.C.
By: ROGER J. McCLOW (P27170)
WILLIAM J. KARGES (P57360)
Attorney for Defendants Local 51, Bianchi, Martin, Grant, Waingrow, Williams, Mitchell and Moore
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650

DANIEL W. SHERRICK (P37171)
General Counsel
LAURA J. CAMPBELL (P32217)
Assoc. General Counsel
International Union, UAW,
Attorneys for Defendant Yokich, Gooden, Wojcik, Geis, Cutway, Mitchell and Stokes
8000 East Jefferson Avenue
Detroit, MI 48214
(313) 926-5216

**DEFENDANT INTERNATIONAL UNION, UAW AND INTERNATIONAL UNION DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

34

NOW COME Defendants International Union, UAW, Yokich, Gooden, Geis, Cutway, Wojcik, Mitchell and Stokes [the "International Union Defendants] and move for summary judgment pursuant to Federal Rules of Civil Procedure 56(b) on each of the grounds listed below.

1. Plaintiff complains that the International Union Defendants disciplined him in violation of the Labor Management Reporting and Disclosure Act. Plaintiff admits, however, that he was not subject to any official union discipline. As a matter of law, the LMRDA only prohibits certain official union discipline. Therefore, Count I of the Complaint should be dismissed.

2. Plaintiff complains that the International Defendants' discriminated against him, in violation of the Elliott-Larsen Civil Rights Act (ELCRA), because of his opposition to the conduct of certain union officials. The conduct about which Plaintiff complained involved alleged financial wrongdoing. To engage in protected activity for purposes of a retaliation claim, the Plaintiff must actually oppose activity that, if true, would be a violation of the ELCRA. The ELCRA does not regulate the conduct of union officials related to financial wrongdoing. Therefore, Count II of the Complaint should be dismissed.

3. Plaintiff testified at his deposition that the Local Defendants discriminated against him due to his religion in violation of the Elliott-Larsen Civil Rights Act. Plaintiff admits, however, that he never discussed his religion with any Union official. Plaintiff produced no evidence that Defendants knew of his religion and no evidence that Defendants discriminated against him due to his religion. Therefore, Count II of the Complaint should be dismissed.

4. Plaintiff complains that the Local Defendants published negative information about him that was false; that Defendants knew, or should have known, that the false publication would likely result in pecuniary loss or in harm to interest of the Plaintiff having a pecuniary value; and that Plaintiff suffered special damages as a result. The conduct about which Plaintiff complains occurred in 1998 and 1999. As a matter of law, a one year statute of limitations applies to general damages for defamation; and a three year statute of limitations period applies only with respect to any alleged special pecuniary damages. As a matter of law, when items of special damages are claimed, they must be specifically stated. Plaintiff failed to specifically state any special damages. Therefore, Count III of the Complaint should be dismissed.

5. Plaintiff complains that the International Union Defendants published negative information about him that was false. In Michigan defamation related claims must be pleaded with specificity. In his Complaint, Plaintiff failed to identify the exact statements and documents about which he is complaining; he failed to identify who uttered the statements or wrote the documents about which he is complaining; he failed to identify when and where the alleged statements and documents were published; and he failed to identify the defamatory nature of the statements and documents about which he is complaining. Therefore, Count III of the Complaint should be dismissed.

6. Plaintiff produced no evidence that Defendants published any false statements or that Defendants knew or should have known, that any false statements they published would likely result in pecuniary loss or in harm to

interest of the Plaintiff having pecuniary value. The statements published by Defendants were published in the labor context. The Supreme Court has held that to be libelous, speech in a labor context must satisfy the actual malice and falsity requirements in *New York Times v. Sullivan*, 376 U.S. 254 (1964). As a matter of law, the statements published by Defendants were privileged. Therefore, Count III of the Complaint should be dismissed.

7. Plaintiff complains that the International Defendants' conduct rises to a cause of action for intentional infliction of emotional distress. As a matter of law, legally privileged conduct cannot raise a claim for intentional infliction of

8. Defendants left a message for Plaintiff's counsel at her office on September 5, 2003 requesting concurrence with this Motion and offering to hold a conference. Plaintiff's counsel did not respond to the message.

9. This Motion is based on the pleadings in this case and the testimony and exhibits produced during discovery. The testimonial and documentary evidence supporting this Motion is attached as an appendix to the International Union Defendant's Brief in Support of Motion for Summary Judgment.

WHEREFORE, the International Union Defendants request that the Complaint be dismissed with prejudice in its entirety and that they be awarded their costs and reasonable attorney fees.

Respectfully submitted,

**DANIEL W. SHERRICK** (P37171)
General Counsel
**LAURA J. CAMPBELL** (P32217)
Associate General Counsel
International Union, UAW
8000 E. Jefferson Ave
Detroit, Michigan 48214
(313) 926-5216

By: ______________________
Laura J. Campbell

Dated: September 8, 2003

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD WEBSTER,

Plaintiff,

v.

Case No. 01-74983
Hon. Victoria A. Roberts

UNITED AUTO WORKERS, LOCAL 51, INTERNATIONAL UNITED AUTO WORKERS, ARTHUR BIANCHI, NATHANIEL MARTIN, ROSALYN GRANT, HOLLY WAINGROW,OLLIE WILLIAMS, ROBERT LEE MITCHELL, JAMES MOORE, STEPHEN YOKICH, MAURICE MITCHELL, STAN GEIS, PETE CUTWAY, GIL WOJCIK, NATE GOODEN and EUNICE STOKES, jointly and severally,

Defendants.

FILED
2003 SEP -8 P 4: 13
U.S. DIST. COURT CLERK
EAST. DIST. MICHIGAN
DETROIT

BENJAMIN WHITFIELD, JR. & ASSOCIATES, P.C.
By: BENJAMIN WHITFIELD, JR. (P23562)
CYNTHIA J. GAITHER (P40755)
Attorney for Plaintiff
440 E. Congress, Suite 300
Detroit, MI 48226
(313) 961-1000

KLIMIST, McKNIGHT, SALE,
McCLOW & CANZANO, P.C.
By: ROGER J. McCLOW (P27170)
WILLIAM J. KARGES (P57360)
Attorney for Defendants Local 51,
Bianchi, Martin, Grant, Waingrow,
Williams, Mitchell and Moore
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650

DANIEL W. SHERRICK P37171)
General Counsel
LAURA J. CAMPBELL (P32217)
Assoc. General Counsel
International Union, UAW,
Attorneys for Defendant
Yokich, Gooden, Wojcik, Geis,
Cutway, Mitchell and Stokes
8000 East Jefferson Avenue
Detroit, MI 48214
(313) 926-5216

**BRIEF IN SUPPORT OF INTERNATIONAL UNION, UAW AND INTERNATIONAL UNION DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## Table of Contents

Page

Index of Authorities ........ i

I. Introduction ........ 1

II. Statement of Facts ........ 1

III. Argument ........ 3

A. Summary Judgment Standard ........ 3

B. Plaintiff has failed to state a claim for Retaliation Under the Labor Management Reporting and Disclosure Act (Count I) ........ 4

C. Plaintiff has failed to state a claim for Retaliation Under the Elliott-Larsen Civil Rights Act (Count II) ........ 6

D. Plaintiff has failed to state a Claim for Injurious Falsehood (Count III) ........ 7

(i) Plaintiff failed to plead claims involving alleged defamation with specificity ........ 8

(ii) Defendants speech was privileged ........ 8

(iii) Plaintiff produced no evidence that Defendant's speech was false ........ 9

(iv) Defendants neither knew, nor should have known, that their speech would cause Plaintiff pecuniary harm ........ 10

(v) Plaintiff failed to plead special damages ........ 10

E. Plaintiff has failed to state a claim for Intentional Infliction of Emotional Distress (Count IV) ........ 11

F. Plaintiff has failed to state a Claim for Continuing Acts of Defamation/Retaliation (Count V) ........ 11

G. Plaintiff has failed to establish a factual basis for a claim against individual International Union defendant Eunice Stokes ........ 12

H. Plaintiff has failed to establish a factual basis for any claim against

individual International Union defendant Maurice Mitchell ................ 13

I. Plaintiff does not state facts to support any legal violation by individual International Union defendant Pete Cutway ...................... 15

J. Plaintiff has failed to state a claim and has provided no facts to support a claim against individual International Union defendant Stan Geis ........................................................................... 16

K. Plaintiff has failed to establish a factual basis for a claim against individual International Union defendant Stephen P. Yokich............ 17

L. Plaintiff has not shown facts to support a claim against individual International Union defendant Nate Gooden.................................. 18

M. Plaintiff has not established facts sufficient to support a claim against individual International Union defendant Gil Wojcik............. 18

IV. Conclusion ........................................................................................ 19

Certificate of Service

Appendix

## Index of Authorities

### Cases

*Andrews v. Prudential Securities Inc.*
160 F3d 304 (6th Cir. 1998) ........ 11
*Baggs v. Eagle-Picher Indus., Inc.*
957 F.2d 268 (6th Cir. 1992) ........ 9
*Booker v. Brown & Williamson Tobacco*
879 F.2d 1304 (6th Cir. 1989) ........ 6
*Breininger v. Sheet Metal Worker Int'l Ass'n Local Union No. 6*
110 S Ct. 424 (1989) ........ 5
*Cochrane v. Wittbold*
359 Mich. 402 (1960) ........ 9
*Comisky v. Automotive Industry Action*
40 F. Supp. 2nd 877 (E.D. Mich. 1999) ........ 6
*Kollenberg v. Ramirez*
127 Mich App. 345 (1983) ........ 7, 10
*Linn v. United Plant Guard Workers*
383 U.S. 53 (1966) ........ 8
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574 (1986) ........ 4
*New York Times v. Sullivan*
376 U.S. 254 (1964) ........ 8
*Porter v. Royal Oak*
214 Mich. App. 478 (1995) ........ 9
*Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*
197 Mich. App. 48 (1992) ........ 8
**UFCW Local 911 v. UFCW International Union**
301 F.3d 468 (6th Cir. 2002) ........ 5
*Watkins v. City of Southfield*
221 F3d 883 (6th Cir. 2000) ........ 11

### Rules

Fed. R. Civ. P., 9 (g); MCR 2.112(I) ........ 10

### Statutes

**29 U.S.C.A. § 411(a)(5)** ........ 4

## I. INTRODUCTION

Plaintiff is a retired Union member who claims that his political fortunes as a player in Local Union politics were unfairly affected by an imagined political conspiracy against him. The facts upon which he bases his claims do not, as he maintains, constitute violations of the LMRDA, the Elliot-Larsen Civil Rights Act, or the Michigan common law torts of injurious falsehood or intentional infliction of emotional distress.

## II. STATEMENT OF FACTS

Plaintiff Richard Webster began working for Chrysler Corporation in 1964 (Webster Dep. pp. 19-20). Plaintiff held full-time elected union positions since approximately 1974 (Webster Dep. pp. 16-17, 19). As a full time elected union official, Plaintiff was employed by and paid by Chrysler Corporation (Webster Dep. pp. 618-619). He worked in the plant representing employees and performing contract administration duties (Webster Dep. pp. 27-28).

While working in an elected position, Plaintiff maintained and continued to accrue seniority in the production classification of job setter. He had the option to return to that position at any time (Webster Dep. pp. 13-14).

On May 12, 1998, Local 51 held elections for committee person and chief steward positions at the Mound Road Engine Plant. Plaintiff ran for reelection as Machining Division Committeeman, one of three committee person positions. Plaintiff was reelected (Webster Dep. 1072).

Darryl Mitchell, a Local 51 member who ran against Plaintiff for Machining Division Committeeman, protested the results of the election due to the alleged

misconduct by Plaintiff's challenger.[1] Darryl Mitchell filed an election appeal and asked that the International Union order a re-run election. Local Union Defendants Robert Lee Mitchell, James Moore and Arthur Bianchi joined with Plaintiff to oppose a re-run election as unnecessary.

Defendant Eunice Stokes, Administrative Assistant to International Union President Stephen P. Yokich, was assigned to investigate the election appeal, and held a fact finding hearing on October 1, 1998. Her investigation revealed that there had been numerous problems with the manner in which the election had been conducted, including that the poll had not opened on time and, once opened, had been closed to reorganize the process. The investigation also determined that Plaintiff's election challenger, Louis Campbell, had had an altercation with another member of the Local Union and with members of the Election Committee. Following the investigation and report, the International Executive Board approved the decision overturning the election (Stokes Dep. Ex. 3). A re-run election was held on May 6, 1999. All of the election contests were re-run, and Plaintiff again defeated Darryl Mitchell for Machining Division Committeeman (Webster Dep. p. 15).

Plaintiff retired from Chrysler effective December 31, 1999 (Webster Dep. pp. 8-9). As a result of his retirement from Chrysler he was required to give up his union position. See, September 27, 1999 National Collective Bargaining Agreement between the International Union, UAW and DaimlerChrysler, ¶ 17, p. 21 ("The Plant Shop Committee of the Union Shall consist of not more than six

---

[1] Each candidate in the election is allowed one challenger to observe the voting and challenge voters they think are ineligible to vote.

(6) members, each of whom shall be an employee of the plant having seniority...") Appendix Ex. 1.

Defendant Stephen P. Yokich served as the President of the International Union from his election in June of 1995 until June of 2002. At the time relevant to this lawsuit, Defendant Nate Gooden served in the elected position of Regional Director for UAW Region 1. He has since been elected as a Vice President of the International Union (Answer of International Union Defendants to 2nd Amended Complaint ¶24).

At all relevant times, Defendants Stan Geis, Eunice Stokes, Pete Cutway, Gil Wojcik, and Maurice Mitchell held appointed positions as staff of the International Union. Defendant Geis served as an Administrative Assistant to Secretary-Treasurer Ruben Burks. Defendant Stokes served as Administrative Assistant to President Stephen P. Yokich. Defendants Cutway, Wojcik and Mitchell held positions as International Representatives assigned to the UAW DaimlerChrysler Department (Answer of International Union Defendants ¶24).

Additional facts will be set forth herein.

## III. ARGUMENT

### A. Summary Judgment Standard

Summary Judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parties entitled to judgment as a matter of law." Fed. Rules of Civ. Proc.56(c). All evidence and inferences to be drawn must be viewed in the light most favorable

to the non-movant, see ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986).

**B. Plaintiff has failed to state a claim for Retaliation Under the Labor Management Reporting and Disclosure Act (Count I).**

Under the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), **§101(a)(5), 29 U.S.C.A. § 411(a)(5)**, a union may not "fin[e], suspend[d], expe[l], or otherwise disciplin[e]" a member for exercising LMRDA Title I-secured free speech rights.

In paragraphs 44 through 56 of his Second Amended Complaint, Plaintiff claims that he was "disciplined" by the Union defendants because he "made statements and filed charges against certain union officials for financial impropriety and other alleged misconduct" (Second Amended Complaint ¶47). According to Plaintiff, these complaints of financial and other impropriety were protected speech secured under Title I of the LMRDA. Plaintiff also maintains that, because he made those complaints, the Union forced him to decide to take a voluntary retirement from his employment at DaimlerChrysler in December of 1999. Finally, Plaintiff states that this retirement decision amounted to his being "otherwise disciplined" in a manner that violated Title I of the LMRDA.

It is not necessary to sort through Plaintiff's testimony 13 days of deposition testimony in order to dispose of this claim against the International Union and the individual International Union Defendants. The United States Supreme Court has made clear that, in making it unlawful for a union to "fine, suspend, expel or otherwise discipline" any of its members for exercising rights

secured under the LMRDA, "Congress meant only to deter punishment authorized by the union as a collective entity, by virtue of its own authority over its members to enforce its rules." ***Breininger v. Sheet Metal Worker Int'l Ass'n Local Union No. 6,*** 110 S Ct. 424. 439 (1989)[2]. According to the Court, Congress meant "discipline" to signify penalties or punishment applied by the union in its official capacity to enforce its own rules, rather than ad hoc retaliation by individual union officers.

Here, Plaintiff does not claim -- nor are there facts to support -- that either the Local Union or the International Union took collective action on behalf of the organizational entity as a penalty or a punishment against him.[3] Indeed, Plaintiff admitted in his Complaint that he was not "officially discharged or suspended," by the Union (Second Amended Complaint, ¶50). Neither does Plaintiff claim that any of the individual International Union defendants sought any such punitive organizational action by either the Local Union or the International Union.[4]

---

[2] In **Breininger, supra,** a Union member, who alleged only that he was victim of personal vendettas of two union officers because he supported one of their political rivals, failed to state claim against union under provisions of LMRDA prohibiting union from fining, suspending, expelling or otherwise disciplining members for exercising rights secured under Act. See also **UFCW Local 911 v. UFCW International Union,** 301 F.3d 468 (6th Cir. 2002)

[3] Plaintiff alleges in ¶50 of his Second Amended Complaint that he was "forced out of the union." That is not true. In fact, Plaintiff remained a member of the UAW even after his retirement. Second Amended Complaint, ¶105. Plaintiff's membership rights were not affected by Defendants' actions.

[4] With respect to each Count in the Second Amended Complaint, Plaintiff admits that he failed to exhaust the mandatory internal union appeal process. He argues that his appeals have been denied in the past and, therefore, the appeal process is unfair and "hardened" against him. Second Amended Complaint ¶¶ 52-55, 68-71, 89-92, 99-102 and 129-130. The International Union's Constitution specifically provides that: "It shall be the duty of any individual . . . if aggrieved by (any action, decision or penalty imposed, to exhaust fully the individual's . . . remedy and all appeals under this Constitution and the rules of this Union before going to a civil court or governmental agency for redress." UAW Constitution p. 99, attached as Appendix Exhibit 1) Plaintiff has produced no evidence that any participant in the appeals process including the Public Review Board and/or the Convention Appeals Committee, the ultimate

**C. Plaintiff has failed to state a claim for Retaliation Under the Elliott-Larsen Civil Rights Act (Count II).**

Plaintiff alleges in his Second Amended Complaint that Defendants discriminated against him because he opposed a violation of the Elliott-Larsen Civil Rights Act (ELCRA) or participated in enforcement procedures:

> **¶65. Plaintiff opposed the violations of ELCRA by making protests, formal charges, and appeals against certain union officials and reporting same to Defendants UAW 51 and IUAW.**
>
> **¶66. Plaintiff's opposition to Defendants and filing internal charges was a significant factor in the adverse treatment Plaintiff received by the individually named Defendants in this matter.**
>
> **¶67. The actions of Defendants violated Plaintiff's rights under ELCRA.**

To engage in protected activity for purposes of a retaliation claim, the Plaintiff "must actually oppose activity that, if true, would be a violation of Civil Rights laws." ***Comisky v. Automotive Industry Action,*** 40 F. Supp. 2nd 877 (E.D. Mich. 1999). An employee may not invoke the protection of the Elliott-Larsen Civil Rights Act by making vague charges of discrimination. ***Booker v. Brown & Williamson Tobacco,*** 879 F.2d 1304 (6th Cir. 1989).

Plaintiff's Second Amended Complaint does not allege that Defendants took any action because of Plaintiff's religion, race, color, national origin, age, sex, height, weight, or marital status. The protests and formal charges referred to involve alleged financial wrongdoing by certain union officials and alleged violations of Plaintiff's right to free speech, matters not regulated by ELCRA.

---

authorities to rule on internal appeals, have any hostility towards him. Therefore, according to Plaintiff's own admissions his Complaint should be dismissed for failure to exhaust the internal union appeal process.

During his deposition, Plaintiff testified that in September or October 2002 he filed a charge with the Michigan Civil Rights Commission alleging that the International Union and the Local Union Defendants discriminated against him on the basis of religion (Webster Dep. pp. 157, 160). He nevertheless admitted that he had never told any union official his religion.[5]

There is no evidence that Defendants knew of Plaintiff's religion and no evidence that Defendants discriminated against Plaintiff due to his religion.

**D. Plaintiff has failed to state a Claim for Injurious Falsehood (Count III).**

In Count III Plaintiff alleges "the individually named Defendants, urged, supported, caused collectively and independently to be published negative information about Plaintiff in the form of verbal statements, memos, fliers, various postings, and letters with knowledge that these statements were false." Second Amended Complaint, ¶74.

In Michigan the elements of a claim for injurious falsehood are: (1) that the defendant published a false statement to a third party knowing that statement to be false (or acting in reckless disregard for its truth or falsity); (2) that the defendant knew, or should have known, that this false publication would likely result in pecuniary loss or in harm to an interest of the Plaintiff having a pecuniary value; and (3) that the Plaintiff suffered special damages as a result. See ***Kollenberg v. Ramirez***, 127 Mich App. 345, 352 (1983).

---

[5] Q. Did you ever tell anybody, any union official, that you were a member of a specific religion other than the humanist religion?
A. No. That's a non-discussible issue.
Webster Dep. pp. 156-158.

**(i) Plaintiff failed to plead claims involving alleged defamation with specificity.**

In Michigan defamation related claims must be pleaded with specificity. MCR 2.111(B)(1) requires plaintiffs to state in their pleadings:

> **A statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend...**

Michigan Courts routinely reject claims of defamation that constitute only general allegations that the defendants' statements were defamatory. ***Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.,*** 197 Mich. App. 48, 53-54 (1992).

Despite testifying at deposition for 13 days, Plaintiff failed to identify the exact statements and documents about which he is complaining, who uttered the statements or wrote the documents, when and where the alleged statements and documents were published, or the defamatory nature of the statements and documents about which he is complaining.

**(ii) Defendants speech was privileged.**

Plaintiff states in his Second Amended Complaint that the Defendants' alleged injurious statements were made in the context of a labor dispute. Second Amended Complaint ¶77. The Supreme Court has held that to be libelous, speech in a labor context must satisfy the actual malice and falsity requirements of ***New York Times v. Sullivan***, 376 U.S. 254 (1964). See, ***Linn v. United Plant Guard Workers***, 383 U.S. 53 (1966).

Federal labor law specifically protects speech in the labor context:

> **The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or**

> **visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act [subchapter], if such expression contains no threat of reprisal or force or promise of benefit.**

29 U.S.C. §158 (c). Moreover:

> **Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions. .**

29 U.S.C. §411.

To the extent that the Plaintiff alleges that any of the International Union Defendants engaged any speech concerning the Plaintiff, that speech was in the context of a union meeting, a Local Union election protest, an internal Union appeal, contract administration or contract negotiations. This is garden variety speech in the labor context. Their speech does not come close to what the Supreme Court considers libelous speech in the labor context.

**(iii) Plaintiff produced no evidence that Defendant's speech was false.**

Truth is a complete defense to a defamation action. See ***Baggs v. Eagle-Picher Indus., Inc.***, 957 F.2d 268, 273 (6th Cir. 1992)(citing ***Cochrane v. Wittbold***, 359 Mich. 402 (1960); ***Porter v. Royal Oak***, 214 Mich. App. 478 (1995). To the extent that Plaintiff has claimed that any of the International Union Defendants have made any statements related to him whatsoever, there is absolutely no record evidence that any such statements are false.[6]

[6] Defendant Stokes appeared at a Local Union meeting and spoke regarding the UAW Constitution, taking several positions that were apparently contrary to Plaintiff's views (Webster Dep. pp. 1061-63,1068). She also wrote an election protest decision with which Plaintiff disagreed, and held that several of his internal appeals were untimely (Stokes Dep. pp.64-80). Defendant Cutway allegedly told another person that Plaintiff was a "liar" with respect to a comment regarding the status of a grievance. There is no direct evidence of this statement. (Webster Dep. Vol 10, pp. 1054-55). Defendant Geis investigated Plaintiff's charge of financial

**(iv) Defendants neither knew, nor should have known, that their speech would cause Plaintiff pecuniary harm.**

There are no facts to suggest that the International Union Defendants made statements in order to cause Plaintiff pecuniary harm. For the many years that Plaintiff held elective office in Local Union 51 he continued to accrue plant seniority and was free to return to his job with DaimlerChrysler Corporation at any time.

**(v) Plaintiff failed to plead special damages.**

Both the Michigan Court Rules and Federal Rules of Civil Procedure provide that "when items of special damages are claimed, they must be specifically stated." Fed. R. Civ. P., 9 (g); MCR 2.112(I). In cases where claims for injurious falsehood and defamation overlap, the one year statute of limitations for defamation, MCL §600.5805(8), applies to general damages. ***Kollenberg v. Ramirez***, 127 Mich. App. 345 (1983). A three year statute of limitations period applies only with respect to any alleged special pecuniary damages. Id.

Most of the conduct about which Plaintiff complains occurred in 1998 and 1999.[7] Plaintiff did not file his complaint until December 2001 - outside the one year statute of limitations for defamation.

Although in his Complaint Plaintiff states that "[he] has suffered special damages as a result of Defendants' actions." Second Amended Complaint, ¶88.

---

misconduct against a political opponent, and exonerated the charged party (Geis Dep. Ex. 1). Defendant Gooden wrote a letter to Plaintiff's political ally and told him that he could not properly hold both the position of Chief Steward and the position of Local Union President. (Webster Dep. Ex. 145).

[7] Plaintiff's Second Amended Complaint maintained that he suffered "Continuing Acts of Defamation/Retaliation" apparently based in part on International Union Defendant Stokes decision that several internal appeals that he filed were untimely. Such "speech" cannot constitute defamation, as set forth above.

Such a general statement is not sufficient to state a claim for injurious falsehood, because it fails to specifically state the particular type and amount of special damages.

### E. Plaintiff has failed to state a claim for Intentional Infliction of Emotional Distress (Count IV).

Count IV alleges a cause of action for Intentional Infliction of Emotional Distress. To state such a claim the "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. (Restatement (2d) of Torts §46 comment.)" ***Andrews v. Prudential Securities Inc.***, 160 F3d 304 (6th Cir. 1998) "Liability does not extend to mere insults, indignities, threats, annoyances, petty impressions, or other trivialities. Plaintiff will only recover for intentional infliction of emotional distress in the most egregious cases." ***Watkins v. City of Southfield***, 221 F3d 883 (6th Cir. 2000). Plaintiff's claims against the International Union Defendants can not possibly be said to fit this description.

### F. Plaintiff has failed to state a Claim for Continuing Acts of Defamation/Retaliation (Count V).

In his Second Amended Complaint Plaintiff added a claim for continuing acts of defamation/retaliation. Plaintiff was permitted only to add claims that occurred after Plaintiff's May 24, 2002 First Amended Complaint. One of the allegations involves International Union Defendants -- that in September 2002 Stokes and Yokich removed Plaintiff from the Local Union Bylaws committee.

Defendant Yokich passed away a month earlier, in August 2002. Defendant Stokes' participation was limited to ruling that Plaintiff's internal appeal regarding the matter was untimely, as set forth below.

**G. Plaintiff has failed to establish a factual basis for a claim against individual International Union defendant Eunice Stokes.**

Plaintiff's claims against individual International Union defendant Eunice Stokes (now Stokes-Wilson), then Administrative Assistant to the International Union President Yokich[8], can be boiled down to the following four items:

1. **Stokes disagreed with Plaintiff's views about lost time.** In November, 1999, Plaintiff filed an Article 31 internal union charge of conduct unbecoming an officer[9] against then Local Union President Art Bianchi, a political opponent. Plaintiff's charge was based on his claim that the President was inappropriately approving lost time vouchers.

   Plaintiff alleges that Stokes attended[10] a November 1999 Local 51 Membership Meeting, where she stated that it was within the Local Union President's purview to determine how to handle lost time requests. (Webster Dep. pp. 1061-1063, 1068).

2. **Stokes stated that the Union has a policy against distributing copies of minutes of Local Union meetings.** At the same Local Union meeting, Stokes commented on Plaintiff's motion regarding the distribution of Local Executive Board and Membership meeting minutes. Stokes stated that UAW Constitution and International Union policy and precedent[11] prohibited distribution of copies of meeting minutes, although members may review the minutes at the Local Union offices. (Webster Dep. pp.1063 – 1067).

---

[8] Stokes processed all internal union appeals filed concerning Chrysler-employed members (Stokes Dep. Vol. 1, p. 62).

[9] Article 31 of the UAW Constitution sets forth a procedure whereby a member or members can charge, with specificity, that another member or other members have violated the Constitution or have engaged in conduct unbecoming an officer (Appendix Ex. 1).

[10] Stokes testified that she attended the Local 51 Membership Meeting at the invitation and direction of the International Union Regional Director with jurisdiction over that Local, and to provide Constitutional interpretation (Stokes Dep. Vol. 3, P. 208-210).

[11] See decision of the International Union's Convention Appeals Committee in ***Mertz et al. v. International Executive Board,*** attached.

3. **Stokes investigated a 1998 election challenge and recommended that the election be overturned.** Stokes was assigned to and handled the investigation into an election challenge following a November 1998 Local Union election in which Plaintiff was reelected as a committeeman. As a result, Plaintiff and all of the other candidates had to run in a rerun election (Stokes Dep. pp. 64 – 80).

   Plaintiff believes that Stokes' recommendation, endorsed by the IEB, was wrong, and blames her for his emotional distress due to the uncertainty as to whether he would be reelected (Webster Dep. pp. 1072 – 1085).

4. **Stokes determined that several internal appeals Plaintiff filed were untimely.** When Plaintiff retired in December 1999 he ceased all involvement in the Union. In 2000, he and other inactive committee members were removed by the Local Union with the International's approval. He says he learned of this two years later, when he also found out that new bylaws had been formulated and approved.

   Plaintiff appealed his removal and the "fraudulent" bylaws internally. His appeal was reviewed by Stokes, who handled all Chrysler appeals. Stokes found that the appeals could not proceed because they were filed well outside of the Constitution's 30-day time limit. (Webster Dep. Vol. 10, pp. 1072 – 1084; Stokes Dep. Vol. 1, pp. 143-144, Vol. 2, pp. 147-153, Dep. Exs. 11, 12, 13, 14, 17)

None of the above facts establish a legal claim.

**H. Plaintiff has failed to establish a factual basis for any claim against individual International Union defendant Maurice Mitchell.**

Plaintiff admits that he named UAW Chrysler Department International Representative Maurice Mitchell as a defendant in this lawsuit for only one reason – in 1998, Mitchell's younger brother, Darryl Mitchell, a Local 51 member, campaigned and ran against Plaintiff to replace him as Committeeman (Webster Dep. pp. 1142 – 1149).

Plaintiff maintains, despite any direct evidence, that Defendant Maurice Mitchell had to have been part of what Plaintiff views as an "International Union policy" to destroy him, based on the following sequence of facts:

1) Plaintiff was an outspoken critic of the UAW Chrysler Department's 1997 decision to permit Chrysler to shut down its "prop shaft" operation at Mound Road Engine in exchange for building a new plant to produce V-6 engines.

2) Fellow Local 51 member Mike Kirksey, had also been an outspoken critic, and as a result had been removed by the UAW Chrysler Department's Director from his appointed position as a Local Union Benefits Representative.

3) Since the International Union leadership had removed Kirksey from his position on the basis of his "prop shaft" opposition, Plaintiff surmised that the International must be mad at him too, and must want to get rid of him.

4) Local 51 member Darryl Mitchell then appears on the scene as a contender for Plaintiff's Committeeman position in the upcoming 1998 election, and launches a "defamatory" political campaign against Plaintiff.

5) From this Plaintiff concluded that International Rep Maurice Mitchell had to have been asked to draft his brother Darryl to attempt to "destroy" Plaintiff.

6) As proof of this, a piece of Darryl Mitchell's campaign literature mentions his brother Maurice.

According to Plaintiff:

**My problem with the whole thing with Maurice is that he participated in trying to destroy me . . . in accordance with the International Union's policy that, Hey we're gong to destroy Mr. Webster. And the only way we can destroy him is that we all have to work together, local and International.**
(Webster Dep. Vol 10, pp. 1148-1149).

There are no other record facts to support the claim against Maurice Mitchell. In addition to existing only in Plaintiff's head, the factual

scenario Plaintiff offers does not support any legal claim against Maurice Mitchell.

**I. Plaintiff does not state facts to support any legal violation by individual International Union defendant Pete Cutway.**

At his deposition, Plaintiff stated that the sole reason that he named Pete Cutway as a defendant in this lawsuit was because another Local 51 member told him that Cutway had called Plaintiff a "liar" in a telephone conversation (Webster Dep. p. 1050, 1054-55).[12] This second hand fact, even if it occurred, obviously does not provide support for a legal claim against Cutway.

Plaintiff stated that after the 1999 negotiations for a new Local agreement, he spoke to a grievant named Peyton at the Mound Road Plant. Plaintiff said he told Peyton that his pending grievance that had been "trashed" as part of some boilerplate language contained in the new agreement. Plaintiff said he told Peyton that there was nothing that could be done to resurrect the grievance. (Webster Dep pp. 1047-1052). Plaintiff complained that Peyton later told him that he had called then International Representative Pete Cutway, and that "Cutway says that you are a liar, that all you got to do is send that grievance to him, and he can't do anything until it gets to him." (Webster Dep. p. 1050).

It is not clear what legal claim Plaintiff believes he has against Cutway based upon these facts.

[12] Q [Campbell] Let me back you up one more time. Mr. Cutway, what you are suing him for in that whole story that you just told me, I believe, is that he called you a liar in a phone call to Mr. Peyton?
A [Webster]: Yes.
Q: Okay. Is there anything else you're suing Mr. Cutway for?
A: No.
(Webster Dep. Vol. 10, pp. 1054-55).

**J. Plaintiff has failed to state a claim and has provided no facts to support a claim against individual International Union defendant Stan Geis.**

Plaintiff stated that he sued Stan Geis, the now retired Administrative Assistant to then UAW Secretary-Treasurer Ruben Burks, solely because of the decision he made regarding Plaintiff's 1998 charges of financial impropriety against then Local 51 Recording Secretary, Mike Kirksey (Webster Dep. pp. 1043-1048, 1201).[13].

Geis' investigation occurred because Plaintiff charged that Kirksey, a political opponent, had improperly received "lost time" payments[14] from the Local Union, and was conducted under the authority of the Secretary-Treasurer. He obtained payroll stubs and vouchers from the Local Union, from Kirksey and from Chrysler, and interviewed Kirksey (Geis Dep pp. 21-22). On March 12, 1999, Geis sent a letter notifying UAW Region 1 Regional Director Nate Gooden (who had jurisdiction over UAW Local 51) of his conclusion that Kirksey had committed no impropriety (Geis Dep. Ex. 1). Plaintiff focuses his claim against Geis this letter, and insists that the letter was "bogus" and written only as part of a complicated conspiracy that he says was launched by the Local Union and the International Union to discredit him in connection with a related defamation

[13] Geis worked for the International Union for 20 years, was the Director of the UAW's Auditing Department prior to becoming the Secretrary-Treasurer's Administrative Assistant, and performed up to a hundred similar investigations. (Geis Dep., p. 43)

[14] "Lost time" payments refer to payments made by the Local Union to compensate a member who "loses" DaimlerChrysler time and pay off work performing some task for the benefit of the Local Union (Geis Dep. pp. 34-35)..

lawsuit Kirksey had filed against him (Webster Dep, 1149-1151)[15]. Plaintiff provides no proof of his outlandish claims in this regard.

**K. Plaintiff has failed to establish a factual basis for a claim against individual International Union defendant Stephen P. Yokich**

Plaintiff says that he sued Defendant Stephen P. Yokich for two reasons; 1) The International Union President "participated" in requiring Plaintiff to run in a rerun election for Local Union office that was "totally unnecessary"; 2) Yokich "supported" and "gave aid" to the acts of Plaintiff's political opponents by "condoning" their actions through the appeal process (Webster Dep. pp. 1025, 1162-1167.

With respect to both of these claims, Plaintiff is referencing Yokich's position as head of the 7-member International Union Executive Board, which, under Article 33 of the UAW Constitution, renders decisions at the second level of the internal appeal process (Stokes Dep. Ex. 1, p. 1).

The election appeal filed by Local 51 member Darryl Mitchell challenging the May 12, 1998 Local Union election was overturned by the IEB when it approved Stokes' recommended decision. Yokich participated in the decision to require a rerun election as IEB member. Plaintiff is not specific as to his claim that Yokich inappropriately refused to uphold appeals against his political opponents, but Yokich's role would have been similarly limited.

[15] Convinced that Geis could not have actually investigated the Kirksey complaint, because "if there had been an investigation. . . the evidence is so overwhelming until its shameful", Plaintiff nevertheless elected to settle the suit against him by paying Kirksey a sum of money (Webster Dep. p. 1171, 1218).

**L. Plaintiff has not shown facts to support a claim against individual International Union defendant Nate Gooden**

Plaintiff's claims against UAW Vice President involve a letter Gooden received, a letter he sent and a piece of literature distributed at the plant in favor of ratification of the controversial "propshaft versus new plant" agreement with DaimlerChrysler. According to Plaintiff, the letter Gooden[16] received from Geis indicating that his investigation had exonerated Kirksey and a letter he later sent instructing Plaintiff's political ally John Williams that he could not simultaneously serve as Chief Steward and President of the Local Union, combined with the pro-ratification leaflet (featuring his picture on it)[17], provides proof positive of Gooden's rule in a Local-International Union conspiracy against him (Webster Dep. pp. 1026 – 1041). No violation or claim is shown by these facts.

**M. Plaintiff has not established facts sufficient to support a claim against individual International Union defendant Gil Wojcik.**

Finally, Plaintiff does not provide facts to support a claim against International Union Representative Gil Wojcik. Plaintiff complains that Wojcik told unnamed others – Plaintiff did not himself hear the statement – that they should not associate with Plaintiff and that he (Wojcik) was going to "gut" Plaintiff and his political associates, which Plaintiff understood to mean that he would be finished off politically (Webster pp. 1098-1099). In addition, Plaintiff complains that Wojcik undermined him as a Committeeman by overturning a grievance settlement and thwarting his efforts to address a perceived contract violation

[16] At the time, Gooden was the UAW Regional Director with jurisdiction over Local 51.
[17] Defendants have never been given a copy of this leaflet (Webster Dep. p. 1038).

involved skilled trades work (Webster Dep. pp. 1098-1114). None of this amounts to a legal violation.

## IV. CONCLUSION

For the reasons stated above, any one of which is sufficient, Defendant International Union, UAW, and the International Union Defendants request that Plaintiff's claims be dismissed with prejudice and that they be awarded their reasonable costs and attorneys fees.

Respectfully submitted,

**DANIEL SHERRICK** (P37171)
General Counsel
**LAURA J. CAMPBELL** (P32217)
Associate General Counsel
International Union, UAW
8000 E. Jefferson Avenue
Detroit, Michigan 48214
(313) 926-5216

By: ______________________
Laura J. Campbell

Dated: September 8, 2003

**Certificate of Service**

The undersigned hereby certifies and declares that copies of the document(s) referenced below were served as follows:

| | | |
|---|---|---|
| 1. | Document(s) served: | Defendant International Union, UAW and International Union Defendants Motion for Summary Judgment<br><br>Brief in Support<br><br>Statement of Issues and Statement of Controlling/Most Appropriate Authority<br><br>Certificate of Service |
| 2. | Served upon: | Cynthia J. Gaither<br>Benjamin Whitfield Jr., & Associates, P.C.<br>440 E. Congress, Suite 300<br>Detroit, Michigan 48226 |
| 3. | Method of service: | Hand Delivered |
| 4. | Date served: | September 8, 2003 |

I certify and declare under penalty of perjury that the foregoing is true and correct.

Laura J. Campbell

STATEMENT OF ISSUES AND
STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY

I. Did Defendant "Discipline" Plaintiff in Violation of the Labor Management Reporting and Disclosure Act, 26 U.S.C. §529?

**Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 587 (1986)

II. Did Defendants Discriminate Against Plaintiff, in Violation of the Elliott-Larsen Civil Rights Act, Due to Plaintiff's Opposition to the Alleged Financial Wrongdoing of Certain Union Officials?

**Breininger v. Sheet Metal Worker Int'l Ass'n Local Union No. 6,** 110 S Ct. 424. 439 (1989)

**UFCW Local 911 v. UFCW International Union,** 301 F.3d 468 (6th Cir. 2002)

III. Did Defendants Discriminate Against Plaintiff, in Violation of the Elliott-Larsen Civil Rights Act, due to Plaintiff's religion?

**Comisky v. Automotive Industry Action,** 40 F. Supp. 2nd 877 (E.D. Mich. 1999)

**Booker v. Brown & Williamson Tobacco,** 879 F.2d 1304 (6th Cir. 1989)

IV. Was Defendants' Speech and Conduct Privileged Pursuant to Federal Labor Law?

**Kollenberg v. Ramirez**, 127 Mich App. 345, 352 (1983)

V. Did Plaintiff Fail to State a Claim for Injurious Falsehood Because He Failed to Plead Special Damages with Specificity?

**Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.,** 197 Mich. App. 48, 53-54 (1992)

**New York Times v. Sullivan,** 376 U.S. 254 (1964)

**Linn v. United Plant Guard Workers,** 383 U.S. 53 (1966)

**Baggs v. Eagle-Picher Indus., Inc.**, 957 F.2d 268, 273 (6th Cir. 1992)

**Porter v. Royal Oak**, 214 Mich. App. 478 (1995)

**Kollenberg v. Ramirez**, 127 Mich App. 345, 352 (1983)

V. Did Plaintiffs Fail to State a Claim for Intentional Infliction of Emotional Distress Because Defendants' Conduct was Legal?

**Andrews v. Prudential Securities Inc.**, 160 F3d 304 (6th Cir. 1998)

**Watkins v. City of Southfield**, 221 F3d 883 (6th Cir. 2000)

VI. Did Plaintiff Fail to State a Claim for Continuing Acts of Defamation/Retaliation?

**Mertz et al. v. International Executive Board**

## Appendix

Tab 1 UAW Constitution

Tab 2 Webster Deposition Excerpts

Tab 3 Stokes Deposition Excerpts

Tab 4 Geis Deposition Excerpts

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED