UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD WEBSTER,

Plaintiff,

v.

Case No. 01-74983
Hon. Victoria A. Roberts

UNITED AUTO WORKERS, LOCAL 51,
INTERNATIONAL UNITED AUTO WORKERS,
ARTHUR BIANCHI, NATHANIEL MARTIN, GIL WOJCIK
ROSALYN GRANT, HOLLY WAINGROW,
OLLIE WILLIAMS, ROBERT LEE MITCHELL,
JAMES MOORE, STEPHEN YOKICH, MAURICE MITCHELL,
STAN GEIS, PETE CUTWAY, NATE GOODEN and EUNICE STOKES,
jointly and severally,

Defendants.

FILED
'03 SEP -8 P4:15
U.S. DIST. COURT CLERK
EAST DIST. MICH
DETROIT

BENJAMIN WHITFIELD, JR. & ASSOCIATES, P.C.
By: BENJAMIN WHITFIELD, JR. (P23562)
CYNTHIA J. GAITHER (P40755)
Attorney for Plaintiff
561 East Jefferson Avenue
Detroit, MI 48226
(313) 961-1000

KLIMIST, McKNIGHT, SALE,
McCLOW & CANZANO, P.C.
By: ROGER J. McCLOW (P27170)
WILLIAM J. KARGES (P57360)
Attorney for Defendants Local 51,
Bianchi, Martin, Grant, Waingrow,
Williams, Mitchell and Moore
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650

DANIEL SHERRICK (P37171)
General Counsel
LAURA CAMPBELL (P32217)
Assoc. General Counsel
Attorneys for Defendants International
Union, UAW, Yokich, Gooden,
Wojcik, Geis, Cutway, Mitchell and Stokes
8000 East Jefferson Avenue
Detroit, MI 48214
(313) 926-5216

**DEFENDANT LOCAL 51 AND LOCAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

35

NOW COMES Defendants Local 51, Arthur Bianchi, Nathaniel Martin, Rosalyn Grant, Holly Waingrow, Ollie Williams, Robert Lee Mitchell and James Moore ("Local Defendants"), by their attorneys, Klimist, McKnight, Sale, McClow & Canzano, and move for summary judgment pursuant to Federal Rules of Civil Procedure 56(b) on each of the grounds listed below.

1. Plaintiff complains that the Local Defendants disciplined him in violation of the Labor Management Reporting and Disclosure Act. Plaintiff admits, however, that he was not subject to any official union discipline. As a matter of law, the LMRDA only prohibits certain official union discipline. Therefore, Count I of the Complaint should be dismissed.

2. Plaintiff complains that the Local Defendants discriminated against him, in violation of the Elliott-Larsen Civil Rights Act (ELCRA), because of his opposition to the conduct of certain union officials. The conduct about which Plaintiff complained involved alleged financial wrongdoing. To engage in protected activity for purposes of a retaliation claim, the Plaintiff must actually oppose activity that, if true, would be a violation of the ELCRA. The ELCRA does not regulate the conduct of union officials related to financial wrongdoing. Therefore, Count II of the Complaint should be dismissed.

3. Plaintiff testified at his deposition that the Local Defendants discriminated against him due to his religion in violation of the Elliott-Larsen Civil Rights Act. Plaintiff admits, however, that he never discussed his religion with any of the Local Defendants. Plaintiff produced no evidence that Defendants knew of his religion and no evidence that Defendants discriminated against him due to his religion. Therefore, Count II of the Complaint should be dismissed.

4. Plaintiff complains that the Local Defendants published negative information about

him that was false; that Defendants knew, or should have known, that the false publication would likely result in pecuniary loss or in harm to an interest of the Plaintiff having a pecuniary value; and that Plaintiff suffered special damages as a result. The conduct about which Plaintiff complains occurred in 1998 and 1999. As a matter of law, a one year statute of limitations applies to general damages for defamation; and a three year statute of limitations period applies only with respect to any alleged special pecuniary damages. As a matter of law, when items of special damages are claimed, they must be specifically stated. Plaintiff failed to specifically state any special damages. Therefore, Count III of the Complaint should be dismissed.

5. Plaintiff complains that the Local Defendants published negative information about him that was false. In Michigan, defamation related claims must be pleaded with specificity. In his Complaint, Plaintiff failed to identify the exact statements and documents about which he is complaining; he failed to identify who uttered the statements or wrote the documents about which he is complaining; he failed to identify when and where the alleged statements and documents were published; and he failed to identify the defamatory nature of the statements and documents about which he is complaining. Therefore, Count III of the Complaint should be dismissed.

6. Plaintiff produced no evidence that Defendants published any false statements or that Defendants knew or should have known, that any false statements they published would likely result in pecuniary loss or in harm to interest of the Plaintiff having pecuniary value. The statements published by Defendants were published in the labor context. The Supreme Court has held that to be libelous, speech in a labor context must satisfy the actual malice and falsity requirements in *New York Times v. Sullivan*, 376 U.S. 254 (1964). As a matter of law, the statements published by

Defendants were privileged. Therefore, Count III of the Complaint should be dismissed.

7. Plaintiff complains that the Local Defendants' conduct rises to a cause of action for intentional infliction of emotional distress. As a matter of law, legally privileged conduct cannot raise a claim for intentional infliction of emotional distress. Therefore, Count IV of the Complaint should be dismissed.

8. Plaintiff complains that Defendant Robert Lee Mitchell wrote poster/fliers which refer to Plaintiff in a negative light. Plaintiff, however, has produced no evidence that Robert Lee Mitchell wrote or distributed any of the poster/fliers. Therefore, Count V of the Complaint should be dismissed.

9. Plaintiff complains that in September 2002 Defendant Arthur Bianchi removed him from the Local bylaws committee. In September 2002 Defendant Bianchi did not hold a union position and, therefore, had no ability to remove Plaintiff from the local bylaws committee. Therefore, Count V of the Complaint should be dismissed.

10. Plaintiff complains that Defendant denied him the opportunity to review membership minutes from November 2002 through February 2003 and lost time vouchers for Bianchi, Martin, Waingrow, Grant and Williams. Such issues are properly subject to the discovery rules set by the Court. Plaintiff did not raise any of these issues with the Court during discovery. Therefore, Count V of the Complaint should be dismissed.

11. Defendants left a message for Plaintiff's counsel at her office on September 5, 2003 requesting concurrence with this Motion and offering to hold a conference. Plaintiff's counsel did not respond to the message.

12. This Motion is based on the pleadings in this case and the testimony and exhibits produced during discovery. The testimonial and documentary evidence supporting this Motion is attached as an appendix to the Local Defendant's Brief in Support of Motion for Summary Judgment.

WHEREFORE, the Local Defendants request that the Complaint be dismissed with prejudice in its entirety and that the Local Defendants be awarded their costs and reasonable attorney fees.

Respectfully submitted,

KLIMIST, McKNIGHT, SALE,
McCLOW & CANZANO, P.C.

By:____________________________

ROGER J. McCLOW (P27170)
WILLIAM J. KARGES (P57360)
Attorneys for Local 51 and Local Defendants
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650

Dated: September 8, 2003

P:\UAW 1\Webster\Pleadings\def mot for summary judgment.wpd

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD WEBSTER,

Plaintiff,

v.

Case No. 01-74983
Hon. Victoria A. Roberts

UNITED AUTO WORKERS, LOCAL 51,
INTERNATIONAL UNITED AUTO WORKERS,
ARTHUR BIANCHI, NATHANIEL MARTIN, GIL WOJCIK
ROSALYN GRANT, HOLLY WAINGROW,
OLLIE WILLIAMS, ROBERT LEE MITCHELL,
JAMES MOORE, STEPHEN YOKICH, MAURICE MITCHELL,
STAN GEIS, PETE CUTWAY, NATE GOODEN and EUNICE STOKES,
jointly and severally,

Defendants.

_______________________________________/

BENJAMIN WHITFIELD, JR. & ASSOCIATES, P.C.
By: BENJAMIN WHITFIELD, JR. (P23562)
CYNTHIA J. GAITHER (P40755)
Attorney for Plaintiff
561 East Jefferson Avenue
Detroit, MI 48226
(313) 961-1000

KLIMIST, McKNIGHT, SALE,
McCLOW & CANZANO, P.C.
By: ROGER J. McCLOW (P27170)
WILLIAM J. KARGES (P57360)
Attorney for Defendants Local 51,
Bianchi, Martin, Grant, Waingrow,
Williams, Mitchell and Moore
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650

DANIEL SHERRICK (P37171)
General Counsel
LAURA CAMPBELL (P32217)
Assoc. General Counsel
Attorneys for Defendants International
Union, UAW, Yokich, Gooden,
Wojcik, Geis, Cutway, Mitchell and Stokes
8000 East Jefferson Avenue
Detroit, MI 48214
(313) 926-5216

_______________________________________/

**BRIEF IN SUPPORT OF LOCAL 51 AND LOCAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY . . . . . . . . . . . . . iv

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

INDEX OF EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. BACKGROUND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A. 1999 Local Negotiations Between Local 51 and Chrysler . . . . . . . . . . . . . . . . . . . 3

B. Plaintiff's Allegations of Misconduct Against Defendants . . . . . . . . . . . . . . . . . . 6

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

A. Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

B. Plaintiff Has Failed to State a Claim for Retaliation under the Labor Management Reporting and Disclosure Act (Count I) . . . . . . . . . . . . . . . . 9

C. Plaintiff Has Failed to State a Claim for Retaliation under the Elliott-Larsen Civil Rights Act (Count II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

D. Plaintiff Has Failed to State a Claim for Injurious Falsehood (Count III) . . . . . . 13

(i) Plaintiff failed to plead claims involving alleged defamation with specificity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

(ii) Defendants speech was privileged . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

(iii) Plaintiff produced no evidence that Defendant's speech was false . . . . . 16

(iv) Defendants neither knew, nor should have known, that their speech would cause Plaintiff pecuniary harm . . . . . . . . . . . . . . . . . . . . . 16

(v) Plaintiff Failed to Plead Special Damages . . . . . . . . . . . . . . . . . . . . . . . . 17

E Plaintiff Has Failed to State a Claim for Intentional Infliction of Emotional Distress (Count IV) . . . . . . . . . . 18

F. Plaintiff Has Failed to State a Claim for Continuing Acts of Defamation/Retaliation (Count V) . . . . . . . . . . 19

IV. CONCLUSION . . . . . . . . . . 20

## STATEMENT OF ISSUES

I. Did Defendant "Discipline" Plaintiff in Violation of the Labor Management Reporting and Disclosure Act, 26 U.S.C. §529?

II. Did Defendants Discriminate Against Plaintiff, in Violation of the Elliott-Larsen Civil Rights Act, Due to Plaintiff's Opposition to the Alleged Financial Wrongdoing of Certain Union Officials?

III. Did Defendants Discriminate Against Plaintiff, in Violation of the Elliott-Larsen Civil Rights Act, due to Plaintiff's religion?

III. Was Defendants' Speech and Conduct Privileged Pursuant to Federal Labor Law?

IV. Did Plaintiff Fail to State a Claim for Injurious Falsehood Because He Failed to Plead The Defamation Portion of the Claim with Specificity?

V. Did Plaintiff Fail to State a Claim for Injurious Falsehood Because He Failed to Plead Special Damages with Specificity?

VI. Did Plaintiffs Fail to State a Claim for Intentional Infliction of Emotional Distress Because Defendants' Conduct was Legal?

VII. Did Plaintiff Fail to State a Claim for Continuing Acts of Defamation/Retaliation?

## STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY

I. Did Defendant "Discipline" Plaintiff in Violation of the Labor Management Reporting and Disclosure Act, 26 U.S.C. §529?

*Breininger v. Sheet Metal Workers Intern.*, 493 U.S. 67 (1989),

II. Did Defendants Discriminate Against Plaintiff, in Violation of the Elliott-Larsen Civil Rights Act, Due to Plaintiff's Opposition to the Alleged Financial Wrongdoing of Certain Union Officials?

*Booker v. Brown & Williamson Tobacco*, 879 F.2d 1304 (6th Cir. 1989).

III. Did Defendants Discriminate Against Plaintiff, in Violation of the Elliott-Larsen Civil Rights Act, due to Plaintiff's religion?

*Booker v. Brown & Williamson Tobacco*, 879 F.2d 1304 (6th Cir. 1989).

III. Was Defendants' Speech and Conduct Privileged Pursuant to Federal Labor Law?

*New York Times v. Sullivan*, 376 U.S. 254 (1964).
*Linn v. United Plant Guard Workers*, 383 U.S. 53 (1966).
*National Ass'n of Letter Carriers v. Austin*, 418 U.S. 264 (1974).

IV. Did Plaintiff Fail to State a Claim for Injurious Falsehood Because He Failed to Plead The Defamation Portion of the Claim with Specificity?

Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc., 197 Mich. App. 48, 53-54 (1992).

V. Did Plaintiff Fail to State a Claim for Injurious Falsehood Because He Failed to Plead Special Damages with Specificity?

*Kollenberg v. Ramirez*, 127 Mich. App. 345 (1983).

VI. Did Plaintiffs Fail to State a Claim for Intentional Infliction of Emotional Distress Because Defendants' Conduct was Legal?

*Watkins v. City of Southfield*, 221 F3d 883 (6th Cir. 2000).

VII. Did Plaintiff Fail to State a Claim for Continuing Acts of Defamation/Retaliation?

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## INDEX OF AUTHORITIES

Page

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) . . . . . . . . . . 9

*Andrews v. Prudential Securities Inc.*,
160 F3d 304 (6th Cir. 1998) . . . . . . . . . . *18*

*Baggs v. Eagle-Picher Indus., Inc.*,
957 F.2d 268 (6th Cir. 1992) . . . . . . . . . . *16*

*Booker v. Brown & Williamson Tobacco*,
879 F.2d 1304 (6th Cir. 1989) . . . . . . . . . . *11, 12*

*Breininger v. Sheet Metal Workers Intern.*,
493 U.S. 67 (1989) . . . . . . . . . . *10*

*Comisky v. Automotive Industry Action*,
40 F. Supp. 2nd 877 (E.D. Mich. 1999) . . . . . . . . . . *11*

*Greenbelt Cooperative Publishing Ass'n., Inc. v. Bresler*,
398 U.S. 6 (1970) . . . . . . . . . . *15, 16*

*Harrison v. Local 54 of Amer. Fed. of State, County & Municipal Emp.*,
518 F2d 1276 (3rd Cir. 1975) . . . . . . . . . . *9*

*Hustler Magazine v. Falwell*,
485 U.S. 46 (1988) . . . . . . . . . . *15*

*Kollenberg v. Ramirez*,
127 Mich App. 345 (1983) . . . . . . . . . . *13, 18*

*Linn v. United Plant Guard Workers*,
383 U.S. 53 (1966) . . . . . . . . . . *15*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) . . . . . . . . . . 9

*National Ass'n of Letter Carriers v. Austin*,
418 U.S. 264 (1974) . . . . . . . . . . *15*

*New York Times v. Sullivan*,
376 U.S. 254 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*,
197 Mich. App. 48 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Watkins v. City of Southfield*,
221 F3d 883 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## INDEX OF EXHIBITS

The following exhibits are attached to the Appendix:


Page

App. Ex. 1: Paragraph 17 of the September 27, 1999 National Collective Bargaining Agreement between the International Union, UAW and Daimler Chrysler . . . . 2

App. Ex. 2: October 21, 1999 Settlement Agreement . . . . 3

App. Ex. 3: Highlights of the 1999 Local Agreement . . . . 4

App. Ex. 4: Contract Low Lights . . . . 4

App. Ex.5: 10/24/99 Robert Lee Mitchell letter . . . . 4

App. Ex. 6: "Just for the Record" Robert Lee Mitchell letter . . . . 4

App. Ex. 7: Official results for 10/27/99 ratification vote . . . . 4

App. Ex. 8: Notice of new ratification vote . . . . 4

App. Ex. 9: Please Vote Again Today by Richard Webster . . . . 4

App. Ex. 10: Is it true by Richard Webster . . . . 4

App. Ex. 11: A No Vote by Richard Webster . . . . 4

App. Ex. 12: Strike is not an option by Richard Webster . . . . 4

App. Ex. 13: Local Contract Voting results by Richard Webster . . . . 4

App. Ex. 14: Request for Retraction by Richard Webster . . . . 4

App. Ex. 15: Candid Conversation - Rosalyn Grant . . . . 5

App. Ex. 16: Candid Conversation - Ollie Williams . . . . 5

App. Ex. 17: Candid Conversation - Nate Martin . . . . 5

App. Ex. 18: Candid Conversation - Bob Mitchell . . . . 5

App. Ex. 19: Candid Conversation - J. Moe . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

App. Ex. 20: Candid Conversation - Holly M. Waingrow . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

App. Ex. 21: Are you interested in the truth . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

App. Ex. 22: Let's Talk about the Truth . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

App. Ex. 23: So Richard you want an apology . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

App. Ex. 24: Official results for 11/4/99 ratification vote . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

App. Ex. 25: November 13, 1975 letter from Richard Webster to Emil Mazey . . . . . . . . . . . . . 5

App. Ex. 26: November 8, 1998 Local 51 Membership Meeting Minutes . . . . . . . . . . . . . . . . . 6

App. Ex. 27: October 6, 1999 Plant Shop Report by Richard Webster . . . . . . . . . . . . . . . . . . . 7

App. Ex. 28: August 16, 2002 Press Release - UAW Mourns Loss of former President Stephen Yokich . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

App. Ex. 29: Defendant Local 51's Response to Plaintiff's Second Request for Production of Document to Defendants, International United Autoworkers and UAW Local 51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

App. Ex. 30: International Union, UAW Constitution, p. 99 . . . . . . . . . . . . . . . . . . . . . . . . . . 11

App. Ex. 31: Richard Webster Deposition Transcript Excerpts . . . . . . . . . . . . . . . . . . . . passim

App. Ex. 32: Arthur Bianchi Deposition Transcript Excerpts . . . . . . . . . . . . . . . . . . . . . . passim

## I. INTRODUCTION

Plaintiff and the Local Defendants were all involved in local union politics. Plaintiff claims that some literature written and distributed by the Local Defendants defamed him, however, he never actually identifies the literature or explains how it defamed him. Most of the literature that he does identify, he admits that there is no evidence it was written by the Local Defendants. All of the literature is several years old.

Plaintiff and the Local Defendants were on the union bargaining committee for the 1999 local contract negotiations between Chrysler and UAW Local 51. Each member of the bargaining committee signed a Settlement Agreement and promised to recommend the Settlement Agreement to the local union membership for ratification. Plaintiff went back on his promise and campaigned against the Settlement Agreement. The Local Defendants honored their promise and campaigned for ratification of the Settlement Agreement. That is the context in which the Local Defendants wrote literature critical of Plaintiff.

The debate between Plaintiff and the Local Defendants, regarding ratification of the Settlement Agreement, is the type of debate that occurs in thousands of local union halls every day. Every day political rivals pick up their pens in an attempt to persuade union members to join one cause and reject another. That dynamic is part of the best traditions in a democratic society and in a democratic union.

## II. BACKGROUND FACTS

1. Plaintiff Richard Webster began working for Chrysler Corporation in 1964. Webster

Tr. 19-20.[1] Plaintiff held full time elected union positions since approximately 1974. Webster Tr. 16-17, 19. As a full time elected union official, Plaintiff was employed by and paid by Chrysler Corporation. Webster Tr. 618-619. He worked in the plant representing employees and performing contract administration duties. Webster Tr. 27-28.

2. While working in an elected position, Plaintiff maintained and continued to accrue seniority in the production classification of job setter. He had the option to return to that position at any time. Webster Tr. 13-14.

3. In May 1999 Plaintiff had been elected to a three year term of office as a shop committee person in the machining division. Webster Tr. 15. Plaintiff retired from Chrysler effective December 31, 1999. Webster Tr. 8-9. As a result of his retirement from Chrysler he was required to give up his union position. See, September 27, 1999 National Collective Bargaining Agreement between the International Union, UAW and DaimlerChrysler, ¶ 17, p. 21 ("The Plant Shop Committee of the Union Shall consist of not more than six (6) members, each of whom shall be an employee of the plant having seniority...") App. Ex. 1.[2]

4. Local Defendants, Arthur Bianchi, Nathaniel Martin, Rosalyn Grant, Holly Waingrow, Ollie Williams, Robert Lee Mitchell and James Moore, also held elective positions within Local 51 in 1999. Webster Tr. 166.

5. In May 1999 Arthur Bianchi was elected President, Nathaniel Martin was elected

[1]Relevant excerpts of deposition testimony are cited herein as (Deponent Tr. ___) and attached as part of the Appendix.

[2] Exhibits are attached as part of the Appendix and cited herein as (App. Ex.____).

Vice-President, Rosalyn Grant was elected Recording Secretary, Holly Waingrow was elected Financial Secretary, and Ollie Williams was elected Treasurer. Bianchi Tr. 9-10, 52-53.

6. Local Defendants Robert Lee Mitchell and James Moore were elected to the shop committee, along with Plaintiff, in May 1998 and again in a May 1999 re-run election. Webster Tr. 43-44.

**A. 1999 Local Negotiations Between Local 51 and Chrysler**

7. In 1999 the Local Defendants and Plaintiff were on the Local 51 bargaining committee. Bianchi Tr. 53. Around August 1999 Local 51 and Chrysler began negotiations for a Local Collective Bargaining Agreement. Webster Tr. 313.

8. The bargaining committee submitted proposals to management, reviewed management proposals, met with management and ultimately reached a Settlement Agreement that required ratification by the membership. Webster Tr. 180, 318-322.

9. Plaintiff participated in all the bargaining sessions. Webster Tr. 313. Plaintiff made proposals regarding the production division he represented. Webster Tr. 318-319, 321. Plaintiff initialed tentative agreements. Webster Tr. 419. Plaintiff engaged in discussions away from the table with management regarding grievances in his area. Webster Tr. 314-315.

10. On October 21, 1999 Chrysler and Local 51 reached a Settlement Agreement. App. Ex. 2. Plaintiff signed the Settlement Agreement. Webster Tr. 345-346, 503, 506-507. The Settlement Agreement provided that "... [t]he Union will recommend to the membership that it be ratified ..." App. Ex. 2.

11. The bargaining committee notified the membership that a ratification vote would be

held on October 27, 1999 and distributed a document highlighting major contractual changes and new understandings between the parties. App. Ex. 3.

12. On the same day the bargaining committee distributed the Contract Highlights, Plaintiff distributed a document he prepared entitled "Contract Lowlights." App. Ex. 4; Webster Tr. 539-544.

13. Defendant Robert Lee Mitchell wrote and distributed two letters to the membership before the ratification vote urging members to ignore anyone campaigning against the Settlement Agreement and to ratify the Settlement Agreement. App. Exs. 5 and 6; Webster Tr. 553-563.

14. The membership rejected the Settlement Agreement. App. Ex. 7; Webster Tr. 567. Notwithstanding the fact that he wrote and distributed the Contract Lowlights, Plaintiff denies that he urged anyone to vote against the Settlement Agreement. Webster Tr. 567-568.

15. Local 51 members circulated a petition asking for another ratification vote. Webster Tr. 649. Another was scheduled for November 4, 1999. App. Ex. 8.

16. Plaintiff continued to campaign against the Settlement Agreement. Webster Tr. 573-574; See e.g. App. Exs. 9-14.

17. The bargaining committee responded to Plaintiff's campaign by writing and distributing literature critical of Plaintiff and in support of the Settlement Agreement. The bargaining committee created a series of documents entitled "A Candid Conversation With Sir Richard of Webster."[3] The candid conversation documents are written in question and answer

---

[3]Arthur Bianchi did not write or distribute the candid conversation documents.

format and depict a fictitious conversation with Plaintiff. In each fictitious conversation Plaintiff admits, among other things, that he has a history of misleading the union membership. App. Exs. 15-20.

18. The bargaining committee also responded to Plaintiff's campaign against the Settlement Agreement by creating and distributing the following documents: (i) Are You Interested in the Truth. App. Ex. 21; (ii) Let's Talk About the Truth. App. Ex. 22; and (iii) So Richard You Want An Apology. App. Ex. 23.

19. On November 4, 1999 the union membership ratified the Settlement Agreement. App. Ex. 24.

20. After the membership ratified the Settlement Agreement, Plaintiff filed numerous internal union charges against the local defendants related to the allegations in the instant lawsuit. Webster Tr. 122, 166, 689-690. The charges were denied and Plaintiff did not pursue internal union appeals. Second Amended Complaint, ¶¶ 52-55, 68-71, 89-92, 99-102 and 129-130.

21. The negative publications referred to in Plaintiff's Second Amended Complaint appear to include the publications described above that were written and distributed by the Local Defendants.[4] Second Amended Complaint, ¶¶ 36-37.

[4]During his deposition Plaintiff identified numerous "negative" documents which date as far back as 1994. Webster Tr. 794-798. During discovery he produced 5803 documents, some dating back almost thirty years. App. Ex. 25. He admitted, however, that the vast majority of the "negative" documents could not be attributed to the Local Defendants in any way. Webster Tr. 259-270, 809-811, 883-887, 897-898, 946-947, 1471, 1475-1482, 1491-1511.

**B. Plaintiff's Allegations of Misconduct Against Defendants**

22. Plaintiff's 131 paragraph Second Amended Complaint contains allegations that Defendants, by implication and/or negative publications, stated or wrote various things regarding Plaintiff. Second Amended Complaint, ¶76(a)-(k).

23. In Complaint paragraph 76(a), (g), and (k), Plaintiff does not identify any particular defendant or particular document about which he is complaining.

24. In Complaint paragraph 76(b) and (i), Plaintiff does not identify any particular defendant or particular document about which he is complaining. During 1999 local negotiations, however, Plaintiff settled various grievances with management in exchange for $55,000 for his division. Webster Tr. 512-513, 584-586. One of the candid conversation documents address that issue. App. Ex. 15.

25. In Complaint paragraph 76(c), Plaintiff does not identify the documents about which he is complaining. However, the local Defendants wrote and distributed Appendix Exhibit 21, asserting that Webster signed the 1999 local Settlement Agreement. Webster's name appears on the Settlement Agreement. App. Ex. 2. At his deposition, before he filed the Second Amended Complaint, Webster testified that he signed the Settlement Agreement. Webster Tr. 345-346, 503, 506-507.

26. In Complaint paragraph 76(d), Plaintiff does not identify the membership minutes about which he is complaining. The November 8, 1998 membership minutes address that issue. App. Ex. 26.

27. At his deposition Webster testified that at a union meeting he may have referred to

somebody as a thief through inference. Webster Tr. 264-265. Later, he changed his answer and said that he did not refer to anyone as a thief at a union meeting, but rather had a conversation with the local union President regarding local union Recording Secretary Mike Kirksey outside of a union meeting. Webster Tr. 1555-1556.

28. In Complaint paragraph 76(e), Plaintiff does not identify any cartoons drawn by Defendants. Two cartoons were discussed during Webster's deposition and he claimed to have no information about who wrote them. Webster Tr. 280, 1493.

29. In Complaint paragraph 76(f), Plaintiff did not identify which Defendant allegedly referred to him as a "maggot of mayhem" and has not produced any tape recording in which he is referred to as a "maggot of mayhem."

30. With respect to Complaint paragraph 76(h), Local 51 obtained Nextel phones for various Local union officials. The International Union later informed Defendant Bianchi, who was the Local Union President at the time, that each official who received a phone would have to pay their own bill. With the exception of Plaintiff, every union official paid their own phone bill. Bianchi sent Plaintiff a letter informing him of the amount he owed. Bianchi did not follow up to collect payment from Plaintiff. Bianchi Tr. 167-168.

31. In paragraph 76 (j), Plaintiff does not identify the document that was allegedly posted in the conference room. During his deposition, however, Plaintiff identified the document as a letter he wrote dated October 6, 1999. App. Ex. 27. He did not see who posted the letter in the conference room. Plaintiff had already distributed the letter throughout the plant before the meeting with management. Webster Tr. 1533-1534.

32. Plaintiff's Second Amended Complaint includes several "continuing" acts of defamation/retaliation. There are three allegations that involve local Defendants.

33. Plaintiff alleges that Defendant Robert Lee Mitchell wrote posters/fliers which refer to Plaintiff in a negative light. Second Amended Complaint, ¶¶ 108-110, 124. Plaintiff allegedly discovered these posters in December 2002. Plaintiff stated at his deposition that he had no information that Robert Lee Mitchell wrote or distributed any of the posters/fliers. Webster Tr. 890.

34. Plaintiff alleges that in September 2002 Defendants Bianchi, Stokes and Yokich removed him from the local bylaws committee. Second Amended Complaint, ¶ 113.

35. Defendant Arthur Bianchi did not hold a union position as of September 2002. He was defeated in his re-election bid for President in June 2002. Bianchi Tr. 9. Steven Yokich passed away on August 16, 2002. App. Ex. 28.

36. Finally, Plaintiff alleges that the Local denied him the opportunity to review membership minutes from November 2002 through February 2003 and lost time vouchers for Bianchi, Martin, Waingrow, Grant and Williams. Second Amended Complaint, ¶ 120.

37. Numerous membership minutes have been turned over to Plaintiff during the course of this litigation. Plaintiff did not make a discovery request for membership meeting minutes from November 2002 through February 2003. Local 51 produced a computer printout of all lost time expenditures for Bianchi, Martin, Waingrow, Grant and Williams prior to the Second Amended Complaint. At the time it was produced Defendants objected to Plaintiff's request for each individual lost time voucher for the reason that the request was overly broad and neither relevant nor reasonably calculated to lead to information relevant to Plaintiff's claims. App. Ex. 29.

## III. ARGUMENT

### A. Summary Judgment Standard

Summary Judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parties entitled to judgment as a matter of law." Federal Rules of Civil Procedure 56(c). All evidence and inferences to be drawn must be viewed in the light most favorable to the non-movant, see *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); however, "the mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B. Plaintiff Has Failed to State a Claim for Retaliation under the Labor Management Reporting and Disclosure Act (Count I)

Plaintiff alleges that although he was not officially discharged or suspended, he was "disciplined" under the Labor Management Reporting and Disclosure Act (LMRDA) because he made statements and filed charges against certain union officials for financial impropriety and other alleged misconduct. Second Amended Complaint, ¶46-51.

The LMRDA, 26 U.S.C. §411 establishes the right of union members to free speech and assembly. In *Harrison v. Local 54 of Amer. Fed. of State, County & Municipal Emp.*, 518 F2d 1276 (3rd Cir. 1975), the Court made clear that union members are free to engage in wide ranging debate:

> The Union member is free to express views, arguments or opinions on matters of union business - even if the expressions be libelous or malicious - without fear of discipline. [citation omitted] Conversely, the LMRDA does not provide relief to a union officer for suspension as an officer, nor for loss of income resulting therefrom.

> Nor does the Act provide relief for wrongful termination for the employment. What is protected is the union - membership relationship. [citations omitted] Id. at 1281.

Section 529 of the LMRDA prohibits certain discipline by a labor organization against a member:

> It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to find, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of his chapter. . . .

In *Breininger v. Sheet Metal Workers Intern.*, 493 U.S. 67 (1989), the Supreme Court found that "discipline" under the LMRDA must be narrowly construed to mean official union discipline:

> . . . we find that by using the phrase "otherwise disciplined," Congress did not intend to include all acts that deterred the exercise of rights protected under the LMRDA, but rather meant instead to denote only punishment authorized by the union as a collective entity to enforce its rules. [citations omitted]. The term refers only to actions "undertaken under color of the union's right to control the member's conduct in order to protect the interest of the union or its membership." Id. at 91.

In the instant case, Plaintiff alleges that local Defendants disciplined him by writing negative things about him. According to the Plaintiff's theory, his speech is protected by the LMRDA and the Local Defendants' speech is prohibited. The Local Defendants were each members of Local 51. The literature they wrote pertained to important union matters. Therefore, the Local Defendants are not subject to liability under the LMRDA.

Moreover, Plaintiff admitted in his Complaint that he was not "officially discharged or suspended," by the Union. Second Amended Complaint, ¶50. In *Breininger*, the Supreme Court held that the LMRDA only prohibits official union discipline. Therefore, Count I of Plaintiff's

Complaint should be dismissed.[5]

### C. Plaintiff Has Failed to State a Claim for Retaliation under the Elliott-Larsen Civil Rights Act (Count II)

In his original Complaint, filed in December 2001, Plaintiff alleges that he was discriminated against by Defendants because he opposed a violation of the Elliott-Larsen Civil Rights Act (ELCRA) or participated in enforcement procedures. Second Amended Complaint ¶¶65-67.

The Elliott-Larsen Civil Rights Act regulates the conduct of employers and labor organizations. Section 204 provides that a labor organization shall not:

> (a) Exclude or expel from membership, or otherwise discriminate against, a member or applicant for membership because of religion, race, color, national origin, age, sex, height, weight, or marital status.

To engage in protected activity for purposes of a retaliation claim, the Plaintiff "must actually oppose activity that, if true, would be a violation of Civil Rights laws." *Comisky v. Automotive Industry Action*, 40 F. Supp. 2nd 877, 898 (E.D. Mich. 1999). An employee may not invoke the protection of the Elliott-Larsen Civil Rights Act by making vague charges of discrimination. *Booker*

---

[5] With respect to each Count in the Second Amended Complaint, Plaintiff admits that he failed to exhaust the mandatory internal union appeal process. He argues that his appeals have been denied in the past and, therefore, the appeal process is unfair and "hardened" against him. Second Amended Complaint ¶¶ 52-55, 68-71, 89-92, 99-102 and 129-130. The International Union's Constitution specifically provides that: "It shall be the duty of any individual . . . if aggrieved by any action, decision or penalty imposed, to exhaust fully the individual's . . . remedy and all appeals under this Constitution and the rules of this Union before going to a civil court or governmental agency for redress." UAW Constitution p. 99, attached as App. Ex. 30. Plaintiff has produced no evidence that any participant in the appeals process including the Public Review Board and/or the Convention Appeals Committee, the ultimate authorities to rule on internal appeals, have any hostility towards him. Therefore, according to Plaintiff's own admissions his Complaint should be dismissed for failure to exhaust the internal union appeal process.

*v. Brown & Williamson Tobacco*, 879 F.2d 1304, 1313 (6th Cir. 1989).

Plaintiff's Second Amended Complaint does not allege that Defendants took any action because of Plaintiff's religion, race, color, national origin, age, sex, height, weight, or marital status. The protests and formal charges referred to in ¶65 of the Second Amended Complaint involved alleged financial wrongdoing by certain union officials and alleged violations of Plaintiff's right to free speech. Financial matters and free speech rights are not regulated by the ELCRA.

During his deposition, Plaintiff testified that in September or October 2002 he filed a charge with the Michigan Civil Rights Commission alleging that Art Bianchi, Nate Martin, Holly Waingrow, Rosalyn Grant, Ollie Williams, Robert Mitchell, James Moore and the International Union discriminated against him on the basis of religion. Webster Tr. 157, 160. During his deposition Plaintiff testified that he never discussed his religion with the Local Defendants. Webster Tr. 158-160.

During discovery Plaintiff did not produce the alleged Michigan Civil Rights charge. There is no evidence that Defendants were aware of such a charge. Moreover, Plaintiff filed the alleged charge: (1) after he retired from Chrysler; (2) after he filed the instant lawsuit, which included the instant ELCRA claim; (3) after Defendants Bianchi, Martin, Waingrow and Williams no longer held union office; and (4) after the local Defendants wrote and distributed the literature that Plaintiff claims was defamatory and a form of retaliation. Webster Tr. 165. Plaintiff has produced no evidence that local Defendants have taken any action towards him after he filed the alleged charge in September or October 2002.

Plaintiff admitted that he never discussed his religion with the local defendants. There is no

evidence that Defendants knew of Plaintiff's religion and no evidence that Defendants discriminated against Plaintiff due to his religion. Therefore, Count II of Plaintiff's Complaint should be dismissed.

**D. Plaintiff Has Failed to State a Claim for Injurious Falsehood (Count III)**

In Count III Plaintiff alleges "the individually named Defendants, urged, supported, caused collectively and independently to be published negative information about Plaintiff in the form of verbal statements, memos, fliers, various postings, and letters with knowledge that these statements were false." Second Amended Complaint, ¶74.

In Michigan the elements of a claim for injurious falsehood are: (1) that the defendant published a false statement to a third party knowing that statement to be false (or acting in reckless disregard for its truth or falsity); (2) that the defendant knew, or should have known, that this false publication would likely result in pecuniary loss or in harm to an interest of the Plaintiff having a pecuniary value; and (3) that the Plaintiff suffered special damages as a result. See *Kollenberg v. Ramirez*, 127 Mich App. 345, 352 (1983).

**(i) Plaintiff failed to plead claims involving alleged defamation with specificity**

In Michigan defamation related claims must be pleaded with specificity. MCR 2.111(B)(1) requires plaintiffs to state in their pleadings:

> A statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend...

Michigan Courts routinely reject claims of defamation that constitute only "'general allegations' that

the defendants' statements were defamatory." *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 197 Mich. App. 48, 53-54 (1992). "Leaving a defendant to guess upon what grounds plaintiff believes recovery is justified violates basic notions of fair play and substantial justice." Id. at 54.

Plaintiff's Second Amended Complaint consists of 131 paragraphs of general allegations. Plaintiff failed to identify the exact statements and documents about which he is complaining; he failed to identify who uttered the statements or wrote the documents about which he is complaining; he failed to identify when and where the alleged statements and documents were published; and he failed to identify the defamatory nature of the statements and documents about which he is complaining. All Defendants can do is guess upon what grounds plaintiff believes recovery is justified.[6]

**(ii) Defendants speech was privileged**

Plaintiff states in his Second Amended Complaint that the Defendants' alleged injurious statements were made in the context of a labor dispute. Second Amended Complaint, ¶¶77-78. During his deposition Plaintiff identified documents written by the Local Defendants that he considered "negative." App. Ex. 15-23. Those documents were written in the context of the 1999 local contract negotiations between Local 51 and Chrysler.

The Supreme Court has held that to be libelous, speech in a labor context must satisfy the actual malice and falsity requirements of *New York Times v. Sullivan*, 376 U.S. 254 (1964). See,

[6]Plaintiff's claims are still unclear today, notwithstanding the fact that the Court twice allowed him to amend his Complaint and the defendants spent approximately thirteen days in deposition attempting to decipher his claims.

*Linn v. United Plant Guard Workers*, 383 U.S. 53 (1966). In *Linn*, the Court stated:

> Labor disputes are ordinarily heated affairs; the language that is commonplace there might well be deemed actionable per se in some state jurisdictions. Indeed, representation campaigns are frequently characterized by bitter and extreme charges, countercharges, unfounded rumors, vituperations, personal accusations, misrepresentations and distortions.

*Linn*, 383 U.S. at 58 (internal citation omitted). See also, *National Ass'n of Letter Carriers v. Austin*, 418 U.S. 264 (1974). "[F]ederal law gives a union license to use intemperate, abusive, or insulting language without fear of restraint." *Letter Carriers*, 418 U.S. at 283. Also, parodies, political cartoons and satires are protected against defamation claims. Statements that cannot reasonably be interpreted as stating actual facts about an individual are protected, thereby assuring that public debate will not suffer for lack of "imaginative expression" or the "rhetorical hyperbole" which has traditionally added much to the discourse of this nation. See, *Greenbelt Cooperative Publishing Ass'n., Inc. v. Bresler*, 398 U.S. 6 (1970); *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988).

The Local Defendants engaged in speech in the context of union meetings, union elections, contract negotiations and a battle to ratify a local Settlement Agreement. Most of the literature about which the Plaintiff complains, that was produced by the Local Defendants, was written in an effort to persuade the union membership to ratify the local Settlement Agreement. Plaintiff, as part of the bargaining committee, had signed the Settlement Agreement and, thereby, promised to recommend it to the membership. Instead of recommending it, he actively campaigned against it. The Local Defendants, on the other hand, honored their commitment to recommend the Settlement Agreement to the membership and actively campaigned for it.

The alleged defamatory speech engaged in by the local Defendants represents garden variety speech in the labor context. Their speech does not come close to what the Supreme Court considers libelous speech in the labor context.

**(iii) Plaintiff produced no evidence that Defendant's speech was false**

In paragraph 76 of his Second Amended Complaint, Plaintiff states that Defendants: "[stated] in writing Plaintiff signed a bargaining agreement which he did not" and "[stated] in writing Plaintiff retained $55,000 of his constituents grievance monies." Other than these allegation Plaintiff does not identify other allegedly false statements made by Defendants.

Truth is a complete defense to a defamation action. See *Baggs v. Eagle-Picher Indus., Inc.*, 957 F.2d 268, 273 (6th Cir. 1992). During his deposition Plaintiff admitted that he signed the 1999 Settlement Agreement and that he settled grievances with Chrysler in exchange for $55,000 for the division he represented. Therefore, those two allegations must be dismissed.

Plaintiff will likely argue that the Candid Conversations documents are "false" because the conversations did not actually take place. Even the most careless reader of the candid conversation documents would realize that they were not a transcript of a real conversation. Such "imaginative expression" or "rhetorical hyperbole" is protected by the Supreme Court. See, *Greenbelt Cooperative, supra and Bresler, supra.*

**(iv) Defendants neither knew, nor should have known, that their speech would cause Plaintiff pecuniary harm**

While holding elective union position, Chrysler employees continue to accrue seniority in their production classification. Generally, there is little financial incentive to hold union office in

that union officers are paid at the same rate as if they were working in the plant.[7] Plaintiff was free to disengage from local union politics and return to his production classification at any time.

Plaintiff and the Local Defendants held important positions within Local 51. They dealt with serious issues that impacted the lives of thousands of members. At times they worked together and at times they fought over issues. The Local Defendants confronted Plaintiff when he violated the very agreement he signed and campaigned against the 1999 Settlement Agreement. They used the power of the pen, writing creative, insightful and informative literature, to defeat Plaintiff's effort to reject the Settlement Agreement. The Local Defendants intended to defeat Plaintiff's campaign against the Settlement Agreement, they did not intend to cause him pecuniary harm.

The 1999 local negotiations began in August 1999. In May 1999, Plaintiff had been elected to a three year term as committee person. The Local Defendants could not have imagined that Plaintiff would retire in December of 1999 because of his failed effort to reject the Settlement Agreement. The debate that ensued around the Settlement Agreement is the type of debate that occurs in thousands of local union halls every day. Every day political rivals pick up their pens in an attempt to persuade union members to join one cause and reject another. That dynamic is part of the best traditions in a democratic society and in a democratic union.

**(v) Plaintiff Failed to Plead Special Damages**

Both the Michigan Court Rules and Federal Rules of Civil Procedure provide that "when items of special damages are claimed, they must be specifically stated." Fed. R. Civ. P., 9 (g); MCR

[7] As a committee person, however, Plaintiff would be eligible for more overtime work than some other production employees.

2.112(I). In cases where claims for injurious falsehood and defamation overlap, the one year statute of limitations for defamation, MCL §600.5805(8), applies to general damages. *Kollenberg v. Ramirez*, 127 Mich. App. 345, 353-355 (1983). A three year statute of limitations period applies only with respect to any alleged special pecuniary damages. Id.

The conduct about which Plaintiff complains occurred in 1998 and 1999. Plaintiff did not file his complaint until December 2001 - outside the one year statute of limitations for defamation. In his Complaint Plaintiff states that "[he] has suffered special damages as a result of Defendants' actions." Second Amended Complaint, ¶88. Such a general statement is not sufficient to state a claim for injurious falsehood, because it fails to specifically state the particular type and amount of special damages.

**(E) Plaintiff Has Failed to State a Claim for Intentional Infliction of Emotional Distress (Count IV)**

Count IV alleges a cause of action for Intentional Infliction of Emotional Distress. To state such a claim the "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. (Restatement (2d) of Torts §46 comment.)" *Andrews v. Prudential Securities Inc.*, 160 F3d 304, 309 (6th Cir. 1998) ". . . Liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. [citations omitted]. . . Plaintiff will only be able to recover for intentional infliction of emotional distress in the most egregious cases." *Watkins v. City of Southfield*, 221 F3d 883, 890 (6th Cir. 2000). Plaintiff's claims do not state a claim for Intentional Infliction of Emotional Distress because, among other reasons,

the speech about which Plaintiff complains was legal.

### F. Plaintiff Has Failed to State a Claim for Continuing Acts of Defamation/Retaliation (Count V)

In his Second Amended Complaint Plaintiff added a Claim for Continuing Acts of Defamation/Retaliation. It was understood that Plaintiff could only add claims that occurred after Plaintiff's First Amended Complaint which was filed on May 24, 2002. Three allegations involve Local Defendants. First, Plaintiff alleges that Defendant Robert Lee Mitchell wrote posters/fliers which refer to Plaintiff in a negative light. Plaintiff testified that he became aware of the posters/fliers around December 2002. Plaintiff admitted at his deposition, however, that he has no information that Robert Lee Mitchell wrote or distributed any of the posters/fliers.

Second, Plaintiff alleges that in September 2002 Defendants Bianchi, Stokes and Yokich removed him from the local bylaws committee. Defendant Bianchi did not hold a union position in September 2002 and, therefore, had no ability to remove Plaintiff from the local bylaws committee. Defendant Yokich passed away in August 2002 and, therefore, most likely had no ability to remove Plaintiff from the local bylaws committee.

Finally, Plaintiff alleges that the Local denied him the opportunity to review membership minutes from November 2002 through February 2003 and lost time vouchers for Bianchi, Martin, Waingrow, Grant and Williams. Defendants turned over membership minutes in response to Plaintiff's First and Second Requests for Production of Documents to Defendant, United Auto Workers, Local 51. Plaintiff did not request membership minutes from November 2002 through February 2003 either during or anytime after the discovery period in this case.

Plaintiff requested lost time vouchers for the named defendants for 1998 and 1999. The Local Defendants objected to the request, but turned over computer printouts showing the lost time payments. See App. Ex. 29, Request No. 3. Plaintiff did not file a motion to compel production of each lost time voucher. Plaintiff's claim that the local union will not allow him to review membership minutes and lost time vouchers is simply an attempt by Plaintiff to engage in discovery outside the schedule set by the Court. Therefore, this claim should be dismissed.

## IV. CONCLUSION

For the reasons stated above, any one of which is sufficient, Defendant Local 51 and the Local Defendants request that Plaintiff's claims be dismissed with prejudice and that they be awarded their reasonable costs and attorneys fees.

Respectfully submitted,

KLIMIST, McKNIGHT, SALE,
McCLOW & CANZANO, P.C.

By:____________________
ROGER J. McCLOW (P27170)
WILLIAM J. KARGES (P57360)
Attorneys for Local 51 and Local Defendants
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650

Dated: September 8, 2003

P:\UAW 1\Webster\Pleadings\new brief for webster.wpd

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD WEBSTER,

Plaintiff,

v.

Case No.01-74983
Hon. Victoria A. Roberts

UNITED AUTO WORKERS, LOCAL 51,
INTERNATIONAL UNITED AUTO WORKERS,
ARTHUR BIANCHI, NATHANIEL MARTIN,
ROSALYN GRANT, HOLLY WAINGROW,
OLLIE WILLIAMS, ROBERT LEE MITCHELL,
JAMES MOORE, STEPHEN YOKICH,
STAN GEIS, PETE CUTWAY, and EUNICE STOKES,
jointly and severally

Defendants.

FILED
'03 SEP -8 P4:15
U.S. DIST. COURT CLERK
EAST DIST. MICH
DETROIT

---

BENJAMIN WHITFIELD, JR. & ASSOCIATES, P.C.
BENJAMIN WHITFIELD, JR. (P-23562)
CYNTHIA J. GAITHER (P40755)
Attorney for Plaintiff
440 E. Congress, Suite 300
Detroit, MI 48226
(313) 961-1000

KLIMIST, McKNIGHT, SALE,
McCLOW & CANZANO, P.C.
By: ROGER J. McCLOW (P27170)
WILLIAM J. KARGES (P57360)
Attorneys for Defendants Local 51,
Bianchi, Martin, Grant, Waingrow,
Williams, Mitchell and Moore
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650

DANIEL SHERRICK (P37171)
General Counsel
LAURA CAMPBELL (P32217)
Associate General Counsel
Attorneys for Defendants International
Union, UAW, Yokich, Gooden,
Wojcik, Geis, Cutway, Mitchell and Stokes
8000 East Jefferson Avenue
Detroit, MI 48214
(313) 926-5216

---

**PROOF OF SERVICE**

**PROOF OF SERVICE**

STATE OF MICHIGAN )
)SS
COUNTY OF OAKLAND )

WILLIAM J. KARGES, being first duly sworn, deposes and says that on the 8th day of September, 2003, he served a copy of Local 51 and Local Defendants' Motion for Summary Judgment, Brief in Support of Motion and this Proof of Service upon:

Cynthia Gaither, Esq.
BENJAMIN WHITFIELD, JR. & ASSOCIATES, P.C.
440 E. Congress, Suite 300
Detroit, MI 48226

by hand delivery.

WILLIAM J. KARGES

Subscribed and sworn to before
me this 8th day of September, 2003.

KAREN ANN PURSLOW, Notary Public
Oakland County, MI
My Commission Expires: April 19, 2008

P:\UAW 1\Webster\Pleadings\pos of mot for summary judgment.wpd